IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CR-61-H
No. 4:03-CR-14-H

UNITED STATES OF AMERICA, )
)
v. )
) **ORDER**
EMMANUEL JEROME GARDNER, )
    Defendant. )

This matter is before the court on the government's motion for an order authorizing consumptive DNA testing. [D.E. #72]. The defendant has responded [D.E. #78], and this matter is ripe for adjudication.

**BACKGROUND**

A federal grand jury indicted the defendant on September 23, 2014, on seven counts of conspiracy, robbery, and discharge and brandishing of a firearm during and in relation to a crime of violence. The indictment alleges that on three occasions in late 2013, defendant, along with his codefendant, Mr. Linwood Hagans, robbed convenience stores at gunpoint. During one robbery, defendant allegedly discharged a firearm. Although each robbery was recorded on surveillance video, the suspects wore both masks and gloves which prevented indisputable identification. At least three other unindicted but known, identified, and named suspects were investigated by law

enforcement officials. Further, at least one purported victim represented with a high degree of certainty that the robber was an individual other than defendant.

During the investigation, Lenoir County Sheriff Chris Hill observed a vehicle he believed to be driven by defendant leave the defendant's residence. Sheriff Hill followed the vehicle and allegedly observed the vehicle come to rest on the shoulder of the road beneath an overpass. After a few minutes, the vehicle moved back onto the road and continued its travel. Sheriff Hill and other law enforcement officials searched the area where the vehicle had stopped. They found a coffee can containing a .22 caliber revolver, a ski mask, digital scales, suspected cocaine, and a pack of cigarettes of the same brand stolen during some of the robberies. No person, however, would testify to seeing defendant place the firearm into the coffee can in which it was found. Further, no person would testify to seeing defendant put the coffee can at the location where it was recovered by law enforcement officials.

An analyst compared test fires from the .22 caliber revolver found in the coffee can to the bullet recovered from the convenience store where a gun was discharged. The analyst reported that the bullet found at the robbery scene was the same caliber as the revolver found in the coffee can, but the bullet

was too damaged to determine whether it was fired from the same gun.

The government now requests the court for permission to test the gun to determine whether any touch DNA can be found. If DNA is found, the government requests the court for permission to perform testing which may entirely consume any DNA found on the gun. Proposed testing would compare any DNA found on the gun to DNA samples obtained from the defendant.

### COURT'S DISCUSSION

The principles set forth in California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988), regarding the Due Process Clause and the government's destruction or loss of evidence prior to a criminal trial assist the court in its analysis. See United States v. Bohl, 25 F.3d 904, 909 (10th Cir. 1994). Courts have long held that criminal defendants are afforded significant procedural safeguards which protect the defendant's opportunity to present a complete defense. Trombetta, 476 U.S. at 485; see also United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). Less clear, however, is the requirement imposed by the Due Process Clause upon the prosecutor regarding any duty the government has to take affirmative steps to preserve evidence on behalf of criminal defendants. Trombetta, 476 U.S. at 486. The key question when determining the duty owed to a criminal defendant

3

by the government is whether the evidence possesses an exculpatory value that is apparent before its destruction. See generally Trombetta, 476 U.S. at 488-89; Youngblood, 488 U.S. at 57-58.

Under Trombetta, the government has a duty under the Due Process Clause to preserve evidence when it both: (1) possesses "an exculpatory value that was apparent before [it] was destroyed;" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 476 U.S. at 488-89. Under Youngblood, however, "unless a criminal defendant can show bad faith" by the government or its agents, "failure to preserve *potentially useful evidence* does not constitute a denial of due process of law. Youngblood, 488 U.S. at 58. Therefore, a key distinction is made between evidence which possesses exculpatory value and evidence which only possesses potentially exculpatory value. See generally Trombetta, 476 U.S. at 488-89; Youngblood, 488 U.S. at 57-58.

The court must first analyze the nature of the evidence to determine whether the standard set forth in Trombetta or Youngblood applies. In contrast to the questions presented before the Supreme Court of the United States in Trombetta and Youngblood, the question presented before the court in the instant case is prospective instead of retrospective. The

4

government urges that the DNA, if any sample even remains on the firearm, has no apparent exculpatory value as required by Trombetta to invoke the government's duty of preservation. The court agrees with the government's conclusion inasmuch as DNA evidence, regardless of the result of testing, cannot prove the defendant was or was not involved in the alleged offenses. The court, however, finds that such evidence, if any, can fairly be considered to be potentially exculpatory under Youngblood.

If the question presented before the court was retrospective, the defendant would be required to show the government consumed the DNA evidence in bad faith. When determining bad faith, the court considers what the government or its agents knew regarding the exculpatory value of the evidence at the time it was lost or destroyed. Youngblood, 488 U.S. at 56, n.*; United States v. Caldwell, 201 F.3d 437, *4 (4th Cir. 1999) (unpublished). The following factors have also been considered by some courts in determining bad faith:

> (1) whether the government had explicit notice that [defendant] believed the [evidence] was exculpatory; (2) whether the claim that the evidence is potentially exculpatory is conclusory, or instead "backed up with objective, independent evidence giving the government reason to believe that further tests of the [destroyed evidence] might lead to exculpatory evidence;" (3) whether the government could control the disposition of the evidence once [defendant] indicated that it might be exculpatory; (4) whether the evidence was central to the case; and

5

> (5) whether the government offers any innocent explanation for its disposal of the evidence.

United States v. Rogers, No. 10-10140-01-JTM, 2010 WL 5015329, at *4 (D. Kan. Dec. 3, 2010) (citing United States v. Smith, 534 F. 3d 1211, 1224-25 (10th Cir. 2008)). Because the government submitted its motion prospectively, the court can establish procedural safeguards to permit the testing requested by the government while preserving the defendant's opportunity to present a complete defense. The court finds that factors (1), (2), and (3) set forth in Rogers and Smith would militate against the government's requested course of action to perform consumptive DNA testing without the presence of an independent expert on behalf of the defendant in the event it did not request prior authorization from the court, while factors (4) and (5) support the government's request. In any event, the government's request for prior authorization convincingly demonstrates good faith regarding its intent to perform a consumptive DNA test on any sample that may be found on the firearm.

Although this court is unwilling to state that the Due Process Clause requires it to prevent destruction of the potential DNA evidence or permit the defendant to hire an expert to be present at any tests conducted on a DNA sample that may be found, this court believes the prospective imposition of

6

prophylactic safeguards in accordance with the ABA Standards on DNA Evidence best preserves the defendant's opportunity to present a complete defense while allowing the government's request to perform testing. ABA Standard 16-3.4 sets forth the following:

> (a) When possible, a portion of the DNA evidence tested and, when possible, a portion of any extract from the DNA evidence should be preserved for further testing. ...
>
> ...(e) If a motion objecting to consumptive testing is filed, the court should consider ordering procedures that would permit an independent evaluation of the analysis, including but not limited to the presence of an expert representing the moving party during evidence preparation and testing, and videotaping or photographing the preparation and testing.

ABA Standards for Criminal Justice, DNA Evidence § 16-3.4 (3d ed. 2007).

## CONCLUSION

For the foregoing reasons, the court hereby orders:

(1) The government be allowed to perform DNA testing on any remaining sample found on the firearm recovered from the can under the overpass;

(2) If the government can develop a usable DNA profile without consuming all of the DNA, it shall preserve the rest of the sample for testing by the defendant's expert if defendant so requests;

(3) If the government cannot develop a usable DNA profile without consuming all of the DNA, it shall be allowed to perform a consumptive DNA test;

(4) At any DNA test, including the recovery of a sample from the firearm and whether or not such test is consumptive, defendant's expert shall be afforded the opportunity to attend and be apprised of the test and procedures performed by the government and its agents; and

(5) The government shall comply with discovery requests by the defendant insofar as they comport with the government's disclosure requirements set forth under applicable constitutional, statutory, and case law.

(6) The defendant shall prepare and file in this court a proposed request for prior authorization of funds within fourteen (14) days of entry of this order if he wishes to seek approval for funds to hire an expert for purposes related to this order.

The court, therefore, GRANTS IN PART and DENIES IN PART the government's motion for authorization to conduct consumptive DNA testing. [D.E. #72].

This 29⁷ᴴ of April 2015.

Malcolm Howard
MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#34